**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STOCK BUILDING SUPPLY, | ) | |
| LLC, et al., | ) | Case No. 09-11572 (MFW) |
| | ) | |
| Debtors. | ) | |

**OPINION**[1]

Before the Court is the objection of Stock Building Supply, LLC ("the Debtor") to the claim of Somerset Properties SPE, LLC ("Somerset"). For the following reasons, the Court sustains the Debtor's objection and disallows the claim.

I.   <u>BACKGROUND</u>

Prior to the bankruptcy filing, on August 12, 2003, a predecessor of the Debtor had entered into a lease ("the Prior Lease") of an office building at 4505 Falls of Neuse Road, Raleigh, North Carolina ("the Property") with Somerset's predecessor.

On May 6, 2009, the Debtor and several of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On that same date, the Debtor and its

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

affiliates filed a joint prepackaged plan of reorganization ("the Plan") and related disclosure statement.  On June 15, 2009, the Court entered an Order confirming the Plan.  The Plan went effective on June 30, 2009.

Pursuant to the Plan, the Prior Lease was rejected by the Debtor under section 365 of the Bankruptcy Code, effective as of July 31, 2009.  Subsequent to the effective date of the Plan, the Debtor and Somerset entered into a new lease effective as of August 31, 2009 ("the New Lease").

On August 12, 2009, Somerset filed a proof of claim in the amount of $468,133 for damages related to the rejection of the Prior Lease.[2]  On October 30, 2009, the Debtor filed the Eleventh Omnibus Objection to claims, including the Somerset claim.  On December 23, 2009, Somerset filed a response to the objection. The parties subsequently agreed to proceed with resolution of the matter through summary judgment.  The Debtors filed their motion for summary judgment on March 2, 2010.  Briefing was completed on April 20, 2010.  The matter is ripe for decision.

II.  JURISDICTION

This Court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B) & (O).

---

[2] The proof of claim was amended on September 16, 2009.

III. <u>DISCUSSION</u>

    A.   <u>Standard for Summary Judgment</u>

Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings.  Rule 9014(c) makes Rule 7056 applicable to contested matters as well.

In considering a motion for summary judgment under Rule 56, the court must view the inferences to be drawn from the record in the light most favorable to the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Hollinger v. Wagner Mining Equip. Co.</u>, 667 F.2d 402, 405 (3d Cir. 1981).  If, viewed in this light, there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, then the court shall enter judgment in the movant's favor.  <u>See, e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986); <u>Carlson v. Arnot-Ogden Mem'l Hosp.</u>, 918 F.2d 411, 413 (3d Cir. 1990).

Once the moving party has established a prima facie case in its favor, the non-moving party must go beyond the pleadings and point to specific facts showing more than a scintilla of evidence that there is a genuine issue of fact for trial.  <u>See, e.g.</u>, <u>Anderson</u>, 477 U.S. at 252; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986).

If the moving party does not bear the burden of proof at
trial, then the moving party has met its burden under Rule 56 by
demonstrating the "absence of evidence to support the non-moving
party's case."  Celotex, 477 U.S. at 325.  The non-moving party
must then present evidentiary materials of the kind listed in
Rule 56(c) in order to demonstrate the existence of all essential
elements of its case.  Id. at 323-24.

B.    Burden of Proof in Objections to Claims

In filing a proof of claim in a bankruptcy case, the
claimant must allege facts that, if true, would support a finding
that the debtor is legally liable to the claimant.  See, e.g., In
re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992).
Where the proof of claim alleges sufficient facts to support a
claim, the claim is prima facie valid.  Id.  See also Fed. R.
Bankr. P. 3001(f) ("A proof of claim executed and filed in
accordance with these rules shall constitute prima facie evidence
of the validity and amount of the claim.").

If a party objecting to a proof of claim presents sufficient
evidence to refute at least one of the elements essential to the
claim's sufficiency, the burden of proof shifts back to the
claimant to prove the validity of the claim by a preponderance of
the evidence.  Allegheny Int'l, 954 F.2d at 173.  The burden of
persuasion is always on the claimant.  Id.

C.    Somerset's Claim for Rejection Damages

1.    Basis for Claim

Somerset's claim asserts that it is entitled to damages for rejection of the Prior Lease pursuant to sections 365(g)[3] and 502(b)(6).[4]  It calculates those damages at $468,133.[5]  The proof of claim sets forth sufficient facts and legal basis to support a prima facie claim against the Debtor.  See Fed. R. Bankr. P. 3001(f).  See also Allegheny Int'l, 954 F.2d at 173.

2.    Basis for Debtor's Objection

The Debtor's objection to the claim relies on the terms of the New Lease executed by the parties effective as of August 31, 2009.  The New Lease provides, in relevant part:

> (b)  Waiver of Proof of Claim.  In consideration of the Tenant entering into this new Lease, the Landlord hereby stipulates that it has not suffered any damages and hereby agrees not to file any proof of claim in the Bankruptcy Case by reason of the rejection of the Prior Lease by Tenant.  Landlord further waives any rights it may have to file any subsequent proof of claim for damages in the Bankruptcy Case.

(New Lease at. § 26(f).)

---

[3]  Section 365(g) provides that the rejection of an unexpired lease by the debtor constitutes a breach of the lease as of a date immediately before the bankruptcy filing.  11 U.S.C. § 365(g).

[4]  Section 502(b)(6) provides that any claim of a lessor for damages resulting from the termination of a lease of real estate will be capped at the lease rent for the greater of one year or 15 percent (not to exceed three years) of the remaining term of the lease.  11 U.S.C. § 502(b)(6).

[5]  For purposes of the summary judgment motion, the amount of the rejection damages is not relevant.

The waiver presents a legally sufficient basis for disallowance of the claim and the burden therefore shifts to Somerset to establish why, in the face of the waiver, its claim is valid.  Allegheny Int'l, 954 F.2d at 173-74.

### 3.  Somerset's Reply

Somerset raises as a preliminary matter[6] that the Court should ignore the documents attached to the Debtor's memorandum of law because no affidavit identifying them was filed in accordance with Rule 56.  The Debtor asserts that all except one of the documents are filed in this case and the Court can take judicial notice of them.  The Court notes that most of the documents in question were identified by Somerset in the certification of Mr. Wilk.  Therefore, the Court finds it unnecessary to decide this issue because it is necessary only to consider the documents identified by Mr. Wilk or pleadings filed of record in this case.  See, e.g., Celotex, 477 U.S. at 323 ("The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the . . . court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is

---

[6]  Somerset also asserts that summary judgment is not appropriate at this time because discovery has not occurred.  The Court finds that summary judgment is appropriate because there is no genuine issue of material fact in dispute and that, therefore, discovery is not warranted.  See, e.g., Celotex, 477 U.S. at 322-24; Carlson, 918 F.2d at 413.

satisfied.")

Somerset presents three arguments in support of its claim: (1) the waiver of claim provision in the New Lease is not effective because Somerset's bankruptcy counsel was not given notice of it, (2) Somerset did not knowingly or intentionally waive its rejection damages claim in signing the New Lease, and (3) the waiver does not cover its proof of claim which was filed before the effective date of the New Lease.

### a.    Notice to Bankruptcy Counsel

Somerset asserts that the waiver is not effective because the Debtor failed to give adequate notice of the waiver provision to Somerset's bankruptcy counsel.  Somerset hired Rabinowitz, Lubetkin & Tully, LLC ("RLT") as its bankruptcy counsel and RLT filed a notice of appearance in the Debtor's bankruptcy case on May 8, 2009, pursuant to Rule 9010(b).  The notice of appearance requested that RLT be served all "notices of any application, motion, pleading, request, suggestion, complaint or demand, whether formal or informal, whether written or oral, and whether transmitted and conveyed by mail, delivery, telephone, telegraph, telex or otherwise, which may affect or seek to affect in any way the rights or interests of Somerset . . . with respect to the Debtor."  Further, it was RLT who negotiated an extension of time to file a claim for Somerset in July 2009 and who filed the rejection damages claim on August 12, 2009.  Therefore, Somerset

asserts that the Debtor was required to give RLT notice that the
Debtor was negotiating the New Lease with Somerset and that the
New Lease contained a waiver of the rejection damages claim filed
on its behalf by RLT.  See, e.g., In re Lomas Fin. Corp., 212
B.R. 46, 53-56 (Bankr. D. Del. 1997) (holding that notice of
objection to a creditor's claim must be served on counsel who has
filed an entry of appearance for the creditor as well as the
creditor).

The Debtor responds that it was under no obligation to give
notice to RLT that the Debtor was negotiating a New Lease with
Somerset's real estate counsel and broker.  Further, the Debtor
asserts that RLT had actual knowledge of that fact as evidenced
by the letter sent by RLT to the Debtor on July 10, 2009,
confirming the extension of Somerset's time to file a claim in
which RLT advises that the parties are negotiating an extension
of the lease.  (See Certification of Kevin Wilk in Opposition to
Debtor's Motion for Summary Judgment, at Ex. B.)  Therefore, the
Debtor contends that Somerset (and RLT) had actual knowledge of
the fact that Somerset's rights might be affected by those
negotiations.  See, e.g., Dollinger v. Poskanzer (In re
Poskanzer), 146 B.R. 125, 130 (D.N.J. 1992) (concluding that
creditor's presence at § 341 meeting put it on actual notice of
the deadline for filing a dischargeability complaint even though
it never got written notice).  Finally, the Debtor argues that

8

because the New Lease was executed two months after the effective date of the Plan, there was no need to file any notice in the bankruptcy case.

Somerset replies that the waiver in the New Lease was akin to a modification of the Plan (requiring formal notice to it) because it eliminated Somerset's entitlement to rejection damages pursuant to that Plan.  See, e.g., In re Dow Corning Corp., 237 B.R. 374, 379 n. 4 (Bankr. E.D. Mich. 1999) (holding that debtor who seeks to modify a plan post-confirmation is obligated to provide affected parties with notice); In re Birdneck Apt. Assocs. II, LLP, 152 B.R. 65, 67 (Bankr. E.D. Va. 1993) (vacating order confirming plan where notice was not sent to creditor's attorney).

The Court agrees with the Debtor that no notice was required in this case.  The settlement with Somerset was not a post-confirmation modification of the Plan[7] as it did not affect any other creditors' rights under the Plan; it was a settlement solely of one creditor's claim.  The Plan expressly contemplated that claim resolutions would occur after the effective date. (See Plan, Art. III, §§ 1.3 & 3.3(c)(ii).)  Because the Plan had been confirmed and was effective, the Debtor was under no

---

[7]   The cases cited by Somerset are distinguishable because they were actually pre-confirmation modifications of a plan. See, e.g., In re Eagle-Picher Indus., Inc., 203 B.r. 256, 278 (S.D. Ohio 1996); In re Int'l Wireless Commc'ns Holdings, Inc., 1999 WL 33483582 (Bankr. D. Del. Dec. 29, 1999); Dow Corning, 237 B.R. at 376; Birdneck, 152 B.R at 66-67.

obligation to file any motion, application or notice in the bankruptcy case regarding the New Lease.  Once a Plan is confirmed, the reorganized debtor is free to conduct its business outside the confines of the Bankruptcy Code and Rules.  See, e.g., Binder v. Price Waterhouse & Co., Inc. (In re Resorts Int'l, Inc.), 372 F.3d 154, 168-69 (3d Cir. 2004) (holding that bankruptcy court has jurisdiction over reorganized debtor and its affairs post-confirmation only to the extent the matter has a close nexus to the interpretation, implementation, consummation, execution or administration of the plan).

Even if RLT were entitled to notice, the Court concludes that it would not be entitled to notice (from the Debtor) that the Debtor was negotiating with its client's other counsel or the terms of those negotiations.  Under the Bankruptcy Code and Rules, the Debtor is obligated only to give notice of certain enumerated matters.  See, e.g., Fed. R. Bankr. P. 2002 (requiring notice of meeting of creditors, proposed sale, lease or use of property of the estate outside the ordinary course of business, settlements, dismissal or conversion of the case, deadline to vote on plan of reorganization, deadline to file claims, and deadline to object to confirmation of plan).  There is no requirement in the Code or Rules that the Debtor give notice of every communication it has with every creditor or even to give notice of negotiations before a deal is struck.  Therefore, if

10

the Debtor had been required to give notice to RLT, it would have
been after the New Lease had been executed by Somerset.  It is
unclear what RLT could have done at that point: RLT is not a
party in this case and would not have standing to object to its
client having entered into the New Lease.

Further, the Court finds that RLT did have notice: it had
actual notice of the fact that Somerset was negotiating with the
Debtor. (See Certification of Kevin Wilk in Opposition to
Debtor's Motion for Summary Judgment, at Ex. B.)  That actual
notice is sufficient.  See, e.g., Poskanzer, 146 B.R. at 130
(concluding that creditors' actual notice of deadline, though it
never received formal notice, was effective to preclude creditor
from filing after deadline).

Finally, the Court concludes that the Debtor was under no
obligation to negotiate with Somerset's bankruptcy counsel.
Somerset itself chose to negotiate the terms of the New Lease
with the Debtor through its real estate broker and counsel, not
its bankruptcy counsel.  Somerset's bankruptcy counsel was aware
of this.  The Court will not now relieve Somerset of the effects
of its choice.

b.   <u>Voluntary and Knowing Waiver</u>

Somerset also asserts that Somerset's waiver of its
rejection damages claim is not enforceable because it was not
knowing and intentional.  In support of its argument, Somerset

11

submitted the certification of Kevin Wilk, the ultimate managing

member of Somerset.   (See Certification of Kevin Wilk in

Opposition to Debtor's Motion for Summary Judgment.)   Mr. Wilk

executed the New Lease on behalf of Somerset.   (Id. at Ex. G.)

In his certification, Mr. Wilk states that he was not aware at

the time he executed the New Lease that it contained a waiver of

Somerset's rejection damages claim and that he would not have

executed the New Lease if he had known.   (Id. at ¶¶ 26 & 27.)

Somerset argues that the question of knowledge is a mixed

question of fact and law, precluding summary judgment on this

issue.   See, e.g., Cullen v. Valley Forge Life Ins. Co., 589

S.E.2d 423, 428 (N.C. Ct. App. 2003).

The Debtor responds that this assertion is quite remarkable

given the fact that the waiver provision in question was on the

signature page of the New Lease, where Mr. Wilk signed the New

Lease.   (See Certification of Kevin Wilk in Opposition to

Debtor's Motion for Summary Judgment, at ¶¶ 24 & 26 & Ex. G.)

The Debtor asserts that surely Mr. Wilk must have seen that

provision at the time he signed it.   Further, the Debtor notes

that Somerset was represented by counsel who negotiated the terms

of the New Lease, and Somerset had ample opportunity to review

the contents of the New Lease and consult its counsel before

executing it.  The Debtor argues that, under applicable law,[8] the

execution of the New Lease by Somerset binds it to the terms of

the Lease and establishes that it had full knowledge of, and

consented to, its terms.  See, e.g., Davis v. Davis, 124 S.E.2d

130, 133-34 (N.C. 1962) (upholding waiver of claims though

plaintiff had failed to read the waiver, had limited education,

and asserted that insurance agent had misrepresented its

contents); Harris v. Bingham, 97 S.E.2d 453, 454 (N.C. 1957)

(stating that the "duty to read an instrument or to have it read

before signing it, is a positive one, and the failure to do so,

in the absence of any mistake, fraud or oppression, is a

circumstance against which no relief may be had, either at law or

in equity") (quoting Harrison v. S. Ry. Co., 47 S.E.2d 698, 700

(N.C. 1948)); Williams v. Williams, 18 S.E.2d 364, 366 (N.C.

1942) (citing cases and holding that signature on release made

waiver valid despite illiterate plaintiff's failure to read or

have the instrument read to her).  See also Restatement (Second)

of Contracts § 157 cmt. B (1981) ("Generally, one who assents to

a writing is presumed to know its contents and cannot escape

being bound by its terms merely by contending that he did not

read them; his assent is deemed to cover unknown as well as known

---

[8]    The parties apparently concede that the New Lease is
governed by North Carolina law.  (See Reorganized Debtor's
Memorandum of Law in Support of Motion for Summary Judgment at
14-16; Memorandum of Law in Opposition to Debtor's Motion for
Summary Judgment at 3, 11-13.)

items.").  Further, the knowledge of an attorney representing a

client is imputed to the client.  See, e.g., Long v. Joyner, 574

S.E.2d 171, 175 (N.C. Ct. App. 2002).

The Court agrees with the Debtor that Somerset is bound by

the terms of the New Lease that it executed, including the terms

of the waiver provision.  "Although '[w]aiver is a mixed question

of law and facts [,w]hen the facts are determined, it becomes a

question of law.'"  Cullen, 589 S.E.2d at 428.  In this case, the

Court does not find credible Mr. Wilk's statement that he was not

aware of that provision at the time he executed the New Lease:

the waiver provision is the only full provision on the signature

page and is mere inches from where Mr. Wilk signed the New Lease.

Further, the Court finds that Somerset is a sophisticated company

(not an illiterate individual) that was represented by counsel in

the negotiations and drafting of the New Lease.  It cannot now be

heard to state it did not have full knowledge of the terms of the

document it executed.  Under applicable law, the execution of a

document establishes that the party had knowledge of its

contents.  See, e.g., Davis, 124 S.E.2d at 133-34 (upholding

waiver of claims though plaintiff was illiterate and had not read

the waiver); Harrison v. S. Ry. Co., 47 S.E.2d at 700 (the "duty

to read an instrument or to have it read before signing it, is a

positive one, and the failure to do so, in the absence of any

mistake, fraud or oppression, is a circumstance against which no

14

relief may be had, either at law or in equity"); Williams, 18 S.E.2d at 366 (holding that signature on release made waiver valid despite illiterate plaintiff's failure to read or have the instrument read to her).  See also Restatement (Second) of Contracts § 157 cmt. B (1981).

Somerset argues, however, that it was mistaken about the terms of the waiver and that, therefore, the doctrine of mistake renders the waiver unenforceable.  See, e.g., Creech v. Melnik, 495 S.E.2d 907, 912 (N.C. 1998) (stating that contract is void where a party is mistaken about a material fact that goes to the essence of the contract); MacKay v. McIntosh, 153 S.E.2d 800, 804 (N.C. 1967) (same).

The Debtor replies that the failure to read the New Lease does not constitute a mistake for purposes of negating the New Lease.  See, e.g., Joaquin v. Joaquin, 698 P.2d 298, 303 (Haw. Ct. App. 1985) ("A mistake as to the nature and effect of a document caused by a failure to read it is not an excusable mistake."); McGregor v. Metro. Life Ins. Co., 136 S.W. 889, 890 (Ky. Ct. App. 1911) ("It is well settled that the failure to read does not constitute a mistake.").  Further, the Debtor argues that even if Mr. Wilk's failure to read the New Lease and its waiver provision was a mistake, it was at most a unilateral mistake which is insufficient to make the waiver voidable.  See, e.g., Isley v. Brown, 117 S.E.2d 821, 823 (N.C. 1961) (holding

15

that signing deed without reading it was a unilateral mistake and

upholding validity of deed).

The Court agrees with the Debtor that Somerset's mistake, if

any, is insufficient to relieve it from the terms of the

agreement it signed.  At most it was a unilateral - not a mutual

- mistake which is insufficient to relieve Somerset from the

terms of the agreement it signed.  The cases cited by Somerset

are easily distinguishable and, in fact, support the Court's

conclusion that Somerset is bound by the terms of the New Lease.

See, e.g., Creech, 495 S.E.2d at 912 (noting that the general

rule is that a mistake must be a mutual one to void a contract

but found contract not enforceable because other party had made a

misrepresentation about the terms of the contract on which the

first party relied); MacKay, 153 S.E.2d at 804 (holding that "a

contract may be avoided on the ground of mutual mistake of fact

where the mistake is common to both parties and by reason of it

each has done what neither intended"); Cheek v. S. Ry. Co., 198

S.E. 626, 628 (N.C. 1938) (ordering new trial because trial court

had not instructed jury that "mere mistake of one party alone is

not sufficient to avoid the contract").

                    c.    Waiver Not Applicable to a Prior Claim

Finally, Somerset argues that by the express terms of the

waiver in the New Lease, it only waived any subsequent claim it

may have.  The relevant language of the waiver cited by Somerset

16

states:

> (b)  <u>Waiver of Proof of Claim</u>.  In consideration
> of the Tenant entering into this new Lease, the
> Landlord hereby stipulates that it has not suffered any
> damages and hereby <u>agrees not to file</u> any proof of
> claim in the Bankruptcy Case by reason of the rejection
> of the Prior Lease by Tenant.  Landlord further waives
> any rights it may have to file any <u>subsequent</u> proof of
> claim for damages in the Bankruptcy Case.

(New Lease at § 26(f).)

Somerset notes that the New Lease was executed on August 31,
2009, while its claim for rejection damages was filed on August
12, 2009.  Therefore, it argues that the waiver does not, in
fact, waive its previously filed proof of claim.  It asserts that
if the Court does not agree, then the clause is at least
ambiguous and not susceptible to summary judgment.

The Debtor disputes the assertion that the waiver provision
is ambiguous or does not waive Somerset's rejection damages
claim.  The Debtor notes that the waiver provision expressly
states that Somerset "hereby stipulates that it has not suffered
any damages . . . by reason of the rejection of the Prior Lease."
The Debtor argues that this clause indisputably provides that
Somerset has no claim for rejection damages, regardless of when
it was filed.

The Court agrees with the Debtor that the waiver provision
is not ambiguous because it is not susceptible to more than one
reasonable meaning.  <u>See, e.g.</u>, <u>Register v. White</u>, 599 S.E.2d
549, 553 (N.C. 2004) (concluding that a contract provision is

only ambiguous when "either the meaning of the words or the effect of provisions is uncertain or capable of several reasonable interpretations").  The waiver provision clearly states that Somerset has suffered no damages and has no claim against the estate for rejection of the Prior Lease.  This precludes any recovery by Somerset on a claim for rejection damages regardless of when it was filed.

IV.  <u>CONCLUSION</u>

    For the foregoing reasons the Court sustains the Debtor's objection to the claim of Somerset and disallows that claim.

    An appropriate Order is attached.

                                    BY THE COURT:


Dated: July 28, 2010               Mary F. Walrath
                                    United States Bankruptcy Judge